# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re:	Chapter 11

Optima HVAC, LLC,	Case No 8:09-BK-28980-CED

    Debtors,
_____/

## EMERGENCY MOTION TO CONVERT CASE FROM CHAPTER 11 TO CHAPTER 7
## (EMERGENCY RELIEF SOUGHT)

Creditor, International Comfort Products, LLC , pursuant to 11 U.S.C. §§1112(b)(1) and 105 of the United States Bankruptcy Code and all other applicable law files this its Emergency Motion to Convert this Chapter 11 case to a Chapter 7 case and in support thereof states:

1. The Debtor, Optima HVAC, LLC filed for Chapter 11 relief on December 21, 2009.

2. The Debtor is a wholesale air conditioning (HVAC) distributor which commenced operations in or around 2003.

3. The Debtor is owned by Azaria Management Group, LLC and Azaria Management Group, LLC is owned by the Debtor's CEO, Mr. Steven Jensen.

4. Movant, International Comfort Products, LLC is the estates largest non insider unsecured creditor in the amount of $1,362,295.96 resulting from products sold to the Debtor for which payment was not made. The Debtor estimates the unsecured creditors to be approximately $1.5 million , thus Movant is a substantial portion of the creditor body. Essentially all of the Debtor's inventory listed on its DIP reports was provided by Movant which places Movant in a unique position as to knowledge concerning the value of such inventory.

5. On April 30, 2010, Mr. Jensen appeared on behalf of the Debtor for a 2004 examination to testify regarding the Debtor's affairs, the Plan and Disclosure Statement filed by

the Debtor on April 20, 2010 [DE 66&67] as well as the documents produced in response to the Duces Tecum examination.[1]

6. Based upon the Debtor's testimony, the documents produced and the Debtor's Plan and Disclosure Statement, it is imperative for this case to be converted to a Chapter 7 case in order for the significant amount of the remaining pre petition inventory to be liquidated before it is diminished in the Debtor's fruitless ongoing operations, for the equipment and trucks to be liquidated and for and independent analysis of potential preferential and fraudulent transfer actions to be undertaken.

7. The Debtor's representative testified that the Debtor is selling its Pre- Petition inventory at substantial discounts (40%-50%) because it is no longer an authorized distributor of the manufacturer, International Comfort Products, LLC. At the inception of this case the Debtor owned inventory (Air Conditioners and Parts) which had a cost value of $789,557.00. As of March 31, 2010 the Inventory was down to $640,813.38 at cost. This inventory is likely free and clear, conversely, the inventory the Debtor is also selling post petition pursuant to its approved consignment agreement has no benefit to the unsecured creditors in a liquidation. The Debtor is discounting the pre-petition inventory outside the ordinary course of business (which it did not pay for pre-petition) to stay afloat, is accruing administrative rent as a poison pill and is artificially deflating the operating costs to shield the significant post petition losses and enable the debtor to continue to pay Mr. Jensen a salary. Movant will present testimony at an evidentiary hearing that a proper liquidation sale would net a substantially greater recovery for the estate than the Debtor's sale of inventory at substantially below cost. The recovery would be far greater than the proposed pay out under the Debtor's Plan which, as set forth below, is not confirmable for a myriad of reasons.

---

[1] The Transcript of the 2004 Examination has been ordered and is forthcoming.

8. Accordingly, it is critical that this Court immediately convert this case to Chapter 7 to preserve such inventory for a proper sale and liquidation together with the estates other assets.

### DEBTOR IS OPERATING AT A CONTINUED LOSS FOR THE BENEFIT OF INSIDERS, NOT CREDITORS AND PLAN IS NOT FEASIBLE.

9. The Debtor has operated at a substantial loss since the inception of this case (as well as the 5 years proceeding this case) resulting in a continued diminishment of the inventory which could be sold in a Chapter 7 case and return a material dividend to unsecured creditors together with the liquidation of the Debtor's other assets.

10. The Debtor has not provided to the court or the creditors in its DIP reports an accurate reflection of the losses it is incurring from its current business operations as it has failed to take into account the significant administrative rent obligations which have not been paid since the Chapter 11 filing exceeding $23,000.00 per month. Accordingly, the losses are substantially greater than reflected.

11. Additionally, the Debtor's principal, Mr. Jensen, has been paid $10,583.00 per month as a salary contrary to the express terms of this Court's March 15, 2010 Order Approving Application for Authority to Pay Officers Salary which was "conditioned on the prompt payment of all other administrative expenses and shall not accrue." However, the rent is accruing as matter of law and the estate is burdened with such expenses.

12. The administrative rent described above relates to two of the Debtor's three locations wherein the Landlord is affiliated with the Debtor by virtue of Mr. Jensen owning the entities, Columbus Drive LLC which owns and is Landlord of the Tampa location and Superior Properties of Pasco, Inc., which owns and is Landlord of the Port Richey location. (The Debtor leases a smaller location in Orlando which is owned by a non insider landlord and rent is

apparently current based on a temporary reduced rent arrangement.) The monthly rent due to Superior is $8,278.00 and the monthly rent to Columbus is $14,678.00. The Debtor testified that each of these locations are critical to the Debtor's operations. As reflected, albeit rather obscurely in the Debtor's Disclosure Statement, the Columbus location in Tampa and the Superior location in Port Richey are subject to pending foreclosure actions filed by Bank of America as the mortgage indebtedness has not been paid.[2]

13. The Debtor submitted a Plan of Reorganization which seeks to treat and pay Bank of America and the SBA, the first and second mortgage's respectively on the two rental properties, as secured creditors of this estate. The Debtor testified and the Schedules reflect that the Debtor is not the owner of the subject properties , is not the mortgage or note payee on the subject notes yet seeks to classify and treat BOA and the SBA as secured creditors in this case. The Debtor's representative testified he had no idea whether this was proper but wanted to negotiate with the BOA to reduce the loan payments from approximately $23,000.00 per month to approximately $8,000.00 per month.

14. A plan which seeks to classify creditors as secured when they are not secured and in fact are not even creditors of the estate is on its face contrary to the Code and non confirmable as a matter of law. 11 U.S.C. §§726 and 1129.

15. Perhaps more importantly, the Debtors efforts in this regard make it crystal clear that the Debtor is seeking to preserve assets of its owners not for the benefit of the creditors but for the benefit of the owners, most specifically Mr. Jensen. Preserving the real properties which are used not only for this Debtor as a tenant but for other purposes and to continue a substantial salary as long as possible to the detriment and diminishment of the Debtors assets is the net

---

[2] The Debtor testified that in order for Superior and Columbus to pay their respective mortgage obligations the Debtor must pay rent, however, the Debtor has been unable to pay rent resulting in its foreclosure actions and the Bank of America was listed as a disputed unsecured creditor on Schedule F, however, BOA did not file a proof of claim in this case prior to the March 8, 2010 deadline. Upon information and belief the Debtor's insiders also use the locations for other purposes unrelated to the Debtor and no additional rent is paid for such use.

result. Moreover, preserving the non debtor properties also preserves the real estate for potential profit of the non debtor insiders.

16. As set forth above, the Debtor has lost money every year it has operated, both in a good economy and in a bad economy. The Debtor's Plan which is based on projections which assume an approximate 66% reduction of "mortgage" indebtedness on properties leased by the Debtor thus allegedly reducing the rent obligations is a completely speculative proposal. As the Debtor conceded it had no deals or even serious discussions with BOA or SBA and the properties leased by the Debtor described as critical to operations are in active foreclosure actions. Additionally, the Debtor's projections, even assuming it could classify, modify and treat BOA and the SBA as secured creditors in this case (which it cannot) are unsupportable and speculative at best as the costs are materially understated and the sales have no basis in reality.

17. The Debtor also testified that its General Sales Manager was charged with and plead guilty to felony charges in regard to a work training innovation program in which the Debtor participated. While the Debtor's principal was not charged he was head of the program and resigned as a result of two of the Debtor's employees (one is now a former employee) having been charged with fraud for false reports, billing and the like in regard to the training program in which the Debtor participated. While the General Sales Manager who plead guilty is still working for the Debtor due to his purported importance to the Debtor, the Debtor testified he will not be employed for long. This was not previously disclosed by the Debtor and is most certainly a material development.

18. Moreover, the Debtor's Plan further seeks to benefit the insiders as opposed to its primary non insider unsecured creditors as it seeks to release third party claims against insiders of the Debtor, completely contrary to applicable law. 11 U.S.C. §524(e); In re Zale Corp, 62 F.3d 746 (5th Cir. 1995); In re Western Real Estate Fund, Inc., 922 F.3d 592(10th Cir. 1990); In re

Lowenschuss, 67 F.3d 1394 (9th Cir. 1995). Even under the jurisdictions which permit third party releases under limited circumstances, the seven factor test applied by such courts pursuant to Dow Corning Corp, 280 F.3d 648 (6th Cir. 2002) makes it clear that this is not a case wherein a third party releases are permissible.

19. The Debtor also seeks to have its owner Azaria Management maintain its ownership interest contrary to the absolute priority rule. 11 U.S.C. §1129 (b)(2)(B) (ii); In re Armstrong Indus., 432 F.3d 507 (3d Cir. 2005) (Whether a reorganization Plan violates the absolute priority rule is a question of law).

20. The Debtor further testified that although there were payments made to its "parent" Azaria within the one year of filing the petition exceeding $700,000.00, there was no preference or fraudulent conveyance analysis done to date, rather, the Plan simply provides that the Debtor may pursue any such claims post confirmation ostensibly for the Debtor's benefit. It is highly unlikely this Debtor would pursue such claims against its owner and there is no benefit to unsecured creditors. This is another reason a Chapter 7 trustee is imperative in this case.

21. These points are raised to show cause for conversion to Chapter 7 and to illustrate the gross overreaching by the Debtor for the benefit of its owners at the expense of the non insider unsecured creditors. There is no doubt certain of these provisions could be changed, but the lack of feasibility and lack of fairness and equity cannot.

22. The Debtor is losing money notwithstanding receiving over $1,362,000.00 in inventory which it did not pay for pre-petition. The creditors have a narrow opportunity to recoup some recovery in this case prior to the Debtor selling off at steep discount the remaining inventory which existed at the date of filing which is in all likelihood free and clear. (Merryll Lynch asserts a secured position but it appears that its perfection was within the preference period and will be avoided by the Debtor or hopefully a Chapter 7 Trustee). There is no doubt

that the Debtor will protest as its objectivity and fiduciary obligation to its creditors are blinded by the desire to benefit insiders. An objective view of the evidence supports a prompt conversion of this case to Chapter 7.

23. There is substantial cause for this court to immediately convert this case to chapter 7 pursuant to 11 U.S.C. §1112(b)(1).

24. Based upon the above, Movant seeks emergency relief as the failure to obtain such relief will substantially diminish the estate and potential return to creditors.

WHEREFORE, Creditor, International Comfort Products, LLC respectfully requests that this Court grant is Motion to Convert this Case to Chapter 7 and such other and further relief this Court deems just and proper.

DATED this 6 day of May, 2010.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

Thomas L. Abrams, Esquire
GAMBERG & ABRAMS
Attorneys for Creditor
    International Comfort Products, LLC
1776 N. Pine Island Road, Suite 309
Ft. Lauderdale, FL 33322
(954) 523-0900
(954) 915-9016
tabrams@tabramslaw.com
By: /s/Thomas L. Abrams
    THOMAS L. ABRAMS, ESQUIRE
    Florida Bar No. 764329

and

Dennis J. LeVine, Esquire
DENNIS LeVINE & ASSOCIATES, P.A.
Attorneys for Creditor
    International Comfort Products, LLC
P. O. Box 707
Tampa, FL 33601
(813) 253-0777
(813) 253-0975
Dennis@bcylaw.com
By:  /s/Dennis J. LeVine
    DENNIS J. LEVINE, ESQUIRE
    Florida Bar No. 375993

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served electronically on all registered CM/ECF users on this 6th day of May, 2010.

By:  /s/Thomas L. Abrams
    THOMAS L. ABRAMS, ESQUIRE
By:  /s/Dennis J. LeVine
    DENNIS J. LEVINE, ESQUIRE